## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

ROY P. HUDSON JR.
Resident State of Florida

AND

DEREK J. UNDERWOOD
Resident State of Alabama

AND

STEVEN R. HEISHMAN
Resident Commonwealth of Virginia

AND

BRITTON F. EARNEST SR.
Heritage Defense Coordinator
VIRGINIA DIVISION OF THE
SONS OF CONFEDERATE VETERANS
Post Office Box No. 29814
Henrico, Virginia 23242-0814

AND

THE SONS OF CONFEDERATE
VETERANS, INC.
Post Office Box No. 59
Columbia, Tennessee 38402

                    Plaintiffs,
    v.


UNITED STATES DEPARTMENT OF DEFENSE,
1000 Defense Pentagon
Washington, D.C. 20301-1000

AND

CIVIL ACTION NO. 23-CV-            .

COMPLAINT

LLOYD AUSTIN, in his official capacity as
Secretary of Defense of the United States,
Department of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

AND

WILLIAM LAPLANTE, in his official capacity as
Under Secretary of Defense for Acquisition and
Sustainment,
3010 Defense Pentagon
Washington, D.C. 20301-3010

AND

UNITED STATES DEPARTMENT OF THE
ARMY,
101 Army Pentagon
Washington, D.C. 20310-0101

AND

CHRISTINE WORMUTH, in her official capacity
as Secretary of the Army,
101 Army Pentagon
Washington, D.C. 20310-0101

                    Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, for their claims against the Defendants, assert and allege as follows:

## I.     **NATURE OF THE ACTION**

1.      Plaintiffs bring this action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*; the National Historic Preservation Act (NHPA), 54 U.S.C. § 300101 *et seq.*; and the Federal Advisory Committee Act of 1972 (FACA), Public Law 92-463 § 1 *et seq.*; for review of a final agency action taken by Defendant, the United States Department of Defense, et al. ("DOD") that has directed the implementation of recommendations of the Naming Commission.[1] This action, taken on January 5, 2023, directs the immediate removal of the Confederate Memorial ("Memorial") from Arlington National Cemetery ("ANC").[2] The Memorial was originally named "New South" by its creator, Moses Ezekiel, and is viewed as a tribute to and a representation of the spirit of reconciliation and healing. The Memorial is often referred to as the "Reconciliation Memorial."

2.      Plaintiffs herein challenge the DOD's action as it failed to comply with Congressional mandates pursuant to the FY21 National Defense Authorization Act ("NDAA") § 370, which requires consideration of local sensitivities by the Commission and exempting gravemarkers from its area of responsibility. The DOD's directive to implement immediately the removal of the Memorial, at great expense, without consideration of local sensitivities and without considering whether the Memorial became the gravemarker for the Memorial's creator,

---

[1]   The Commission on the Naming of Items of the Department of Defense (also known as the "Naming Commission") was established by the National Defense Authorization Act for Fiscal Year 2021 for the purpose of renaming or removing (i.e., purging) the names, symbols, displays, monuments, and paraphernalia that honor or commemorate the Confederate States of America or those that voluntarily served.

[2]   *See* U.S. Dept. of Defense, DOD Begins Implementation of Naming Commission Recommendations (January 5, 2023) (https://www.defense.gov/News/Releases/Release/Article/3259966/dod-begins-implementation-of-naming-commission-recommendations/); Secretary of Defense, Memorandum For Senior Pentagon Leadership Defense Agency and DOD Field Activity Directors (Oct. 6, 2022), (https://media.defense.gov/2022/Oct/06/2003092544/-1/-1/1/IMPLEMENTATION-OF-THE- NAMING-COMMISSIONS-RECOMMENDATIONS.PDF).

three former Confederate officers, and two of the officers' respective spouses, upon their internment at ANC; whether such action goes beyond the DOD's authority under NDAA § 370; whether such action violates APA § 706 because its issuance is arbitrary, capricious, and an abuse of the DOD's discretion; whether such action exceeds the DOD's statutory authority; and whether such action is otherwise not in accordance with controlling law.

3.  Plaintiffs seek a judgment declaring that the DOD has no authority under the NDAA to require implementation of the Naming Commission's recommendation to remove the Memorial in ANC; declaring that the DOD's directive is invalid; and enjoining the DOD from implementing or otherwise enforcing the Naming Commission's recommendation.

## II.    PARTIES

4.  Plaintiff Roy P. Hudson Jr. is an individual residing in Florida and a member of the Capt. J.J. Dickson Camp 1387, Sons of Confederate Veterans, operating in Brevard County, Florida. Plaintiff Hudson has been an active member of the SCV since 1991. In his role as a member of the SCV, Plaintiff Hudson wishes to see his ancestor's grave undisturbed, unmolested, and at rest, affording the same dignity as all other veterans interred at ANC enjoy in perpetuity.

5.  Plaintiff Hudson is a lineal descendant of Pvt. John J. Newcomb, who served in the Army of the Confederate States of America in Co. D of the 56th Regt. of Virginia Infantry, during the Civil War. Pvt. John Newcomb is interred in Section 16 of Arlington National Cemetery commonly referred to as the Confederate Section, in Grave No. 241-A, and his wife Margaret Ann (Watts) Newcomb is also interred therein. Pvt. Newcomb and his wife Margaret are Plaintiff Hudson's maternal great-great-grandparents.

6.  Plaintiff Hudson and his family have visited the graves of his great-great-

grandparents at Arlington to pay their respect to their ancestors, and to place flowers or other tokens of appreciation, affection, and remembrance.

7.      Plaintiff Hudson has reflected at the graveside of his ancestors as well as visited the Memorial. For Plaintiff Hudson, the Memorial represents the reunification of the North and South after the Civil War, as well as the commemoration of all fallen members of the military who gave their last full measure of devotion while engaged in our Nation's most costly conflict.

8.      For Plaintiff Hudson, removal of the Reconciliation Memorial will broadcast a message of dishonor which amounts to an act of disgrace to those soldiers and sailors interred in Section 16, including Plaintiff's ancestor. Such action will cause Plaintiff Hudson and his family grave harm by forever separating their ancestor from all other veterans interred at ANC, whether such ancestor perished in the Civil War or died years after the war ended.

9.      Plaintiff Derek J. Underwood is a resident of the State of Alabama, Cullman County, and is a member of the Thomas Jefferson Denney Camp 1442, Sons of Confederate Veterans ("SCV") operating in Cullman County. Plaintiff Underwood has been an active member of the SCV since 2016. In his role as a member of the SCV, Plaintiff Underwood wishes to see his ancestor's grave undisturbed, unmolested, and at rest, affording the same dignity as all other veterans interred at ANC enjoy in perpetuity.

10.     Plaintiff Underwood is a collateral descendant of his third-great-uncle, Pvt. Henry Randall Fones, who served in the Army of the Confederate States of America in Co C of the 47th Regt. of Virginia Infantry. Pvt. Henry R. Fones is interred in Section 16 of Arlington National Cemetery, commonly referred to as the Confederate Section, in Grave No. 262. He was mortally wounded on December 13, 1862, at the Battle of Fredericksburg and transported to Washington,

D.C. for medical care where he died on January 27, 1863, some six weeks after receiving his combat wounds.

11.     Plaintiff Underwood and his family members have visited the grave of their third great-uncle at Arlington to pay their respect to their ancestor, and to place flowers or other tokens of appreciation, affection, and remembrance.

12.     For Plaintiff Underwood, the Memorial represents the reunification of the North and South after the Civil War, as well as the commemoration of all fallen members of the military who gave their last full measure of devotion while engaged in our Nation's most costly conflict.

13.     Moreover, for Plaintiff Underwood the removal of the Reconciliation Memorial, will broadcast a message of dishonor which amounts to an act of disgrace to those soldiers and sailors interred in Section 16, including Plaintiff's ancestor. Such action will cause Plaintiff Hudson and his family grave harm by forever separating their ancestor from all other veterans interred at ANC, whether such ancestor perished in the Civil War or died years after the war ended.

14.     Plaintiff Steven R. Heishman is a resident of the Commonwealth of Virginia, Shenandoah County, and a member of the Captain Jack Adams Camp 1951, SCV operating in Shenandoah County. Plaintiff Heishman has been an active member of the SCV since 2010. In his role as a member of the SCV, Plaintiff Heishman wishes to see his ancestor's grave undisturbed, unmolested, and at rest, affording the same dignity as all other veterans interred at ANC enjoy in perpetuity.

15.     Plaintiff Heishman is a collateral descendant of his second great-uncle Corporal Samuel Moomaw, who served in the Army of the Confederate States of America in Co. K of the 7th Regt. of Virginia Cavalry (also known as Ashby's Cavalry). Corporal Samuel Moomaw is interred in Section 16 of Arlington National Cemetery, commonly referred to as the Confederate Section, in Grave No. 77. He was mortally wounded at Culpeper, Virginia on September 13, 1863, and transported to Washington, D.C. for medical care where he died on September 18, 1863, about five days after receiving his combat wounds.

16.     Plaintiff Heishman and his family members have visited the grave of his second great-uncle at Arlington to pay their respect to their ancestor, and to place flowers or other tokens of appreciation, affection, and remembrance.

17.     Plaintiff Heishman has personally reflected at the graveside of his ancestor as well as visited the Memorial. For Plaintiff Heishman the Memorial represents the reunification of the North and South after the Civil War, as well as the commemoration of all fallen members of the military who gave their last full measure of devotion while engaged in our Nation's most costly conflict.

18.     For Plaintiff Heishman, the removal of the Reconciliation Memorial will broadcast a message of dishonor which amounts to an act of disgrace to those soldiers and sailors interred in Section 16, including my ancestor causing me and my family harm by forever separating his ancestor from all other veterans interred at ANC whether such ancestor perished in the Civil War or died years after the war ended.

19.     In addition, Plaintiffs Hudson, Underwood, and Heishman will be harmed by the agency action challenged herein because the deconstruction, removal, and likely destruction of

the Memorial, through the use of heavy equipment including jackhammers, and the multitudes of workers digging, sawing, and tramping through the area which will likely result in damage to existing headstones and graves, as well as interfere with the solemnity and serenity of the hallowed grounds of ANC and in particular, Section 16.

20.      Plaintiff Britton Franklin Earnest Sr. is the Heritage Defense Coordinator for the Virginia Division Sons of Confederate Veterans, Inc. ("VA SCV" or "VA Division"), and holds the primary responsibility for organizing and executing the heritage activities of the VA Division, which includes, but is not limited to; (1) the oversight of efforts to preserve Confederate Memorials wherever dedicated within the geographic boundaries of the Commonwealth of Virginia; (2) defend against bias that undercuts the integrity of the Confederate soldier's good name; preservation of the history of the South in the antebellum and postbellum periods; and the perpetuation of those principles of self-governance and self-reliance for which these veterans fought.

21.      In exercising these responsibilities, Plaintiff Earnest was involved over the past several years, in efforts to preserve Confederate Memorials including the memorials dedicated to Confederate General Officers, Robert E. Lee and Thomas Jonathan (Stonewall) Jackson in Charlottesville, Virginia. Now, with the call for the deconstruction, removal, and likely destruction, which is an option discussed by the Naming Commission, Plaintiff Earnest has sought to support this litigation as necessary.

22.      Plaintiff Sons of Confederate Veterans, Inc. ("SCV") is a nonprofit fraternal organization which is organized and exists for the purpose of honoring and remembering the sacrifices made by those who served in the armed forces of the Confederate States of America during the American Civil War. SCV is a non-profit organization that works diligently to

preserve the memory and reputation of the Confederate soldiers, emphasizing the virtues of their fight for the preservation of liberty and freedom. The organization, through its state affiliates, known as "divisions," and its local affiliates, known as "camps," provides a service to communities through the preservation of monuments, flags, and other historical materials, as well as through educational activities and other civic activities.

23.     The SCV was originally organized at Richmond, Virginia in 1896 with a mission to honor and protect the legacy of those who had fought for the Confederacy. The membership is open to all male descendants of Confederate veterans who served honorably without regard to ethnicity, race, or religious creed; and whose ancestors fought for the Confederacy.

24.     The constitution of the SCV provides that the organization "shall be strictly patriotic, historical, educational, benevolent, non-political, non-racial and non-sectarian." The constitution of the SCV further states that the purposes of the organization, among others, is "[a]n unquestioned allegiance to the Constitution of the United States of America ...; to associate in one united, compact body all men of Confederate ancestry and to cultivate, perpetuate and sanctify the ties of fraternity and friendship entailed thereby; to aid and encourage the recording and teaching with impartiality of all Southern history and achievement ..., seeing to it especially that the events of the War Between the States are authentically and clearly written...."

25.     The SCV  was not created out of hate and is nonpolitical; therefore, it does not endorse politicians or political parties. The SCV has consistently resisted and opposed the use of the Confederate Battle Flag by individuals and organizations pursuing political agendas or seeking to discriminate against individuals or groups.

26.     The organization raises and donates money for the conservation and preservation of Confederate flags and records; identifies preserves and marks the graves of Confederate

veterans; preserves memorials to veterans and Confederate units; supports museums; preserves battlefields threatened by development; educates children and adults about the life of the Confederate soldier; and aids in the care of the graves of Confederate veterans throughout the nation. The SCV serves as a historical, patriotic, and non-political organization dedicated to insuring that the history of the period from 1861-1865 is preserved.

27.     The status of Plaintiff SCV as a nationally recognized civic organization is objectively documented in the following particulars:

A.     Plaintiff SCV has tax-exempt status under Section 501(c) (3) of the Internal Revenue Code of 1986 as a civic league or organization from the Internal Revenue Service.

B.     Plaintiff SCV and its subordinate organizations in the Commonwealth of Virginia are in full compliance with all statutes and regulations applicable to non-profit entities in the Commonwealth.

28.     Independent of this lawsuit, the SCV has expended significant resources in developing and preparing polling in conjunction with a third-party vendor, purchasing software from "OneClickPolitics®" to ensure grassroots advocacy from our membership to their congressional delegation related to The Naming Commission's recommendation as to the Memorial at ANC, speaking and attending conferences in furtherance of increasing understanding of the Civil War, Southern heritage, and the artistic and historic significance of the Reconciliation Memorial, as well as protecting Confederate graves and gravemarkers.

29.     The removal of the Memorial frustrates the sole mission of SCV's organization by redirecting resources that would be used for educational materials and advocacy associated with its affiliated regional, state, and local entities to confront the imminent threat of destruction of a

significant part of American and Southern history in ANC.

30.     Further, Plaintiff SCV's organizational resources have been diverted and diminished to challenge this agency action due to the irreversible nature of the damage that would result from any implementation of the agency's decision.

31.     Plaintiff SCV, through its counsel, monitored the discussion related to Section 16, and the Memorial at the November 7-8, 2022 Federal Advisory Committee on Arlington National Cemetery ("Advisory Committee on Arlington" or "Advisory Committee") Zoom meeting.

32.     The harm and injuries to the Plaintiffs outlined herein will be redressed by this Court's order granting the injunctive relief demanded, enjoining the Defendants from further action, and declaring that the Defendants have no authority to remove or cause the removal of the Memorial.

33.     Defendant Lloyd Austin is the United States Secretary of Defense. Defendant Lloyd Austin is sued in his official capacity as the Secretary of Defense. In that capacity, Defendant Austin is responsible for the entire United States Department of Defense, including the United States Army. Upon information and belief, Defendant Austin's principal office is located at 1000 Defense Pentagon Washington, D.C. 20301- 1000.

34.     Defendant William LaPlante is the United States Under Secretary of Defense for Acquisition and Sustainment. In that capacity, Defendant LaPlante issued the January 5, 2023 directive full implementation of the Naming Commission recommendations was to begin. Upon information and belief, Defendant LaPlante's principal office is located at 3010 Defense Pentagon, Washington, D.C. 20301-3010.

35.     Defendant Christie Wormuth is the Secretary of the Army. In that capacity,

Christie Wormuth is responsible for the operations of the entire United States Army. Upon information and belief, Defendant Wormuth's principal office is located at 101 Army Pentagon, Washington, D.C. 20310-0101.

36.     Defendant United States Army is a constituent branch of the Department of Defense. The Army has jurisdiction over ANC, which is inclusive of Section 16 where the Confederate Memorial is situated, and where Confederate service members, as well as their spouses, and unknown Confederate service members, are interred.[3] ANC is located within the Military District of Washington, and the United States Army has direct jurisdiction over its care, operations, and maintenance.

### III.    JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises federal questions under the APA. 5 U.S.C. § 551 *et seq.*

38.     28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 authorizes the declaratory relief requested. Injunctive relief is authorized by 28 U.S.C. § 2202.

39.     Judicial review of this final agency action is authorized by §§ 10(a), 10(c), and 10(e) of the APA, 5 U.S.C. §§ 702, 704, and 706.

40.     Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) as the affected facility and the *res* of the case are situated within the United located in this judicial district. Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

### IV.    INTRODUCTION

41.     This is an action to prevent the Defendants from violating specific Congressional

---

[3] *See About Arlington National Cemetery* (https://www.arlingtoncemetery.mil/about). *See Also* https://www.arlingtoncemetery.mil/Explore/Monuments-and-Memorials/Monuments-and-Memorials/Confederate-Memorial (last visited March 6, 2023).

mandates and their obligations under the APA, NEPA, NHPA, and FACA by way of their illegal, arbitrary, and capricious decision to tear down, remove, and thereby desecrate, damage, and likely destroy the Memorial's longstanding prominence at ANC as a grave marker and symbol of reconciliation.

42.   The Memorial, as well as the surrounding grounds on which it stands, is a priceless monument, accepted by President Wilson on behalf of the American People recognizing its extraordinary significance to American history and cultural heritage. Erected in the early 1900s during the post-reconstruction era, the Memorial represents a symbol of reconciliation aimed at healing a country divided during a brutal sectional war and reconstruction. Virtually all American presidents in the modern era, including Barrack Obama, have laid a wreath of flowers at the Memorial as a tribute to the spirit of reconciliation and healing it represents.

43.   The Memorial stands watch over a specially designated area of ANC, which is identified as Section 16, which is the final resting place of some 487 Confederate service members and their wives. The Memorial itself is a gravemarker; and, at its base, the remains of the Jewish veteran artist who designed the statue, and those of three Confederate officers, as well as those of two of their wives are interred.[4] In addition, these four graves are situated within a couple of feet of the base of the Memorial itself. Other memorials at ANC are described as being

---

[4] In addition to artist Sgt. Moses Ezekiel, the three other veterans interred at the base of the Memorial are Capt. John M. Hickey, Co. H 6th MO Infantry CSA along with his wife Fannie Bayard, 1st Lt. Henry H. Marmaduke Provisional Navy CSA, and Brig. Gen. Marcus J. Wright, Cheatham's Division CSA along with his wife Pauline Womack. The links below provide biographical information as well as photographic views demonstrating the close proximity of these veterans' graves to the base of the Memorial:

Sir Moses Ezekiel - Cadet, Virginia Military Institute Confederate States of America (arlingtoncemetery.net);
https://www.arlingtoncemetery.net/mjwright.htm
Fannie Bayard Hickey - Wife of John Hickey Confederate States of America Army (arlingtoncemetery.net); and
Henry Hungerford Marmaduke - Captain, Confederate States of America Navy (arlingtoncemetery.net)
The information for each of these veterans is available in a searchable database at
https://www.arlingtoncemetery.net/csa.htm.

"Near the Fallen they Represent."

44.     Other memorials near the fallen, such as that of the U.S.S. Maine, have the veterans buried approximately thirty feet away from its base, with a single-lane road separating the interred veterans from their memorial. Because of the extremely close burials near the base of the Confederate Memorial, it is striking, as well as significant, that the Naming Commission has recommended that the base of the Memorial be left intact so as to minimize the likelihood of disturbing the aforementioned graves in Paragraph No 43.[5]

45.     The Commission recommended in Part III of its Final Report to Congress in September 2022 that the Department of Defense tear down and relocate the Memorial using the most cost-effective method available.[6]  On October 6, 2022, Defendant  Austin approved and adopted the Naming Commission's recommendations and directed the use of existing resources to implement all recommendations.  On January 5, 2023, Defendant  LaPlante directed all Department of Defense organizations to use existing military resources to begin full implementation of the Naming Commission's recommendations, including tearing down and removing the Memorial.[5]

46.     Defendants' actions are Final Agency Actions.  There is no further agency action;

---

[5] See The Naming Commission Report to Congress Part III: Remaining Department of Defense Assets at p. 23, in which The Naming Commission sets forth the following:

- The statue atop of the monument should be removed. All bronze elements on the monument should be deconstructed, and removed, preferably leaving the granite base and foundation in place to minimize risk of inadvertent disturbance of graves.

- The work should be planned and coordinated with the Commission of Fine Arts and the Historical Review Commission to determine the best way to proceed with removal of the monument.

- The Department of Army should consider the most cost-effective method of removal and disposal of the monument's elements in their planning.

[6] See The Naming Commission, *Final Report to Congress Part III: Remaining Department of Defense Assets*, p. 15 (September 2022) (https://drive.google.com/file/d/17hGFyILlQU52W8JHXXqMo3eEDsf781Ra/view)

nor is there any further opportunity for public comment, discussion, or debate on the issue of *whether* the Memorial will be torn down and removed. That administrative die has been cast. The only public comment which may be solicited by the Army will focus on the disposition of the monument after removal.

47. The fact that the Memorial is a gravemarker precludes its removal. In NDAA § 370(j), Congress explicitly exempted grave markers from the Naming Commission's consideration for renaming or removal.[7]

48. Defendants have violated and continue to violate this statute through their actions which will tear down, remove, and desecrate a historical gravemarker and the sacred graves that it overlooks.

49. In drafting and adopting the Naming Commission's report and recommendations to tear down the Memorial, Defendants pointedly did not comply with Congressional mandates

---

[7] However, the Naming Commission has even placed forward the idea of demolishing the same as follows:

"The Department of the Army conducted a study to explore alternatives ranging from leaving the memorial in place and providing contextualization (using signage and other media to provide educational opportunities for visitors) to removal. The term removal includes:

\*\*\*

♦ deconstructing, tagging and storing bronze elements and *demolishing granite elements*
\*\*\*
♦ *demolishing the bronze elements while leaving the granite elements in place*
♦ *demolishing and recycling all components of the memorial*
\*\*\*

The Commissioners discussed at length if the proposed measures eliminated the items at issue and any disturbance to adjacent graves (there is not as the ANC has previously done work in the cemetery; *in this case, the robust mitigation measures to avoid disturbing adjacent grave sites would include placing steel decking over the graves*). *In the case of this monument, the Commissioners assessed that contextualization was not an appropriate option.*

**Recommendations**
After a review of options from the Department of the Army study, the Commission recommends:
\*\*\*
♦ The Department of Army should *consider the most cost-effective method of removal and disposal* of the monument's elements in their planning."

*See* The Naming Commission, *Final Report to Congress Part III: Remaining Department of Defense Assets* (Emphasis added to original).

and directives that they were to seek and incorporate local sensitivities in making decisions pertaining to renaming and removal recommendations. This is also apparent in that the Naming Commission has stated that it does not want to honor volunteers to the Confederacy, however, there are approximately thirteen unknown Confederate veterans buried in Section 16 and several whose last names are only known without an indication for which Confederate state these men served. As a result, the remit seems difficult at best to ensure orthodoxy as these Confederate veterans may not have been volunteers, and instead conscripts. There is no way to ensure that these men acted voluntarily, and the Memorial/gravemarker cannot be shown with any real certainty that the same solely represents volunteers.

50.     Defendants violated NEPA by failing to consider the environmental impacts and alternatives associated with removing such an immense, historic structure within the beautiful and sacred grounds of the Nation's most prominent military cemetery.

51.     Defendants also violated the NHPA by failing to consider the impacts on historic and cultural resources, particularly the fact that the Memorial itself is significant in our Nation's history and a significant component of the Arlington National Cemetery Historic District; and by failing to provide the Advisory Council on Historic Preservation an opportunity to comment on the removal directive.

52.     Defendant Department of the Army also violated FACA by foreclosing preparation of an advisory report by the Advisory Committee on Arlington by instructing that the decision on removal had already been made and that there was no need for an advisory report from the ANCAC.

53.     Defendants violated FACA by refusing to allow interested registered members of the public, to address the ANCAC about the Naming Commission's recommendations and to

appeal for the Committee to perform its duty in making an Advisory Opinion to the Secretary of the Army, thus preventing these comments from being included in the ANCAC meeting record.

54.     Defendants' actions are illegal, arbitrary, and capricious, in violation of the APA and other controlling statutes. Accordingly, this Court should immediately enjoin the Defendants from taking any further actions to tear down or move the Memorial or take any other action that will irreparably damage the Memorial and the sacred graves that it marks and oversees.

## V.     FACTUAL BACKGROUND

### A.     HISTORY OF THE CONFEDERATE SECTION AND THE MEMORIAL THAT COMMEMORATES ITS SIGNIFICANCE

55.     Arlington National Cemetery, the Nation's most prominent military cemetery, is on the National Register of Historic Places and is the final resting place for more than 400,000 veterans of every American conflict, from the Revolutionary War to the wars in Iraq and Afghanistan.[8] Since its founding in 1864, ANC has provided a solemn place to reflect upon the sacrifices made by the men and women of the United States Armed Forces on behalf of our country.[9]

56.     The Civil War was a critical and defining conflict in our nation's history, and soldiers who perished on Civil War battlefields are rightly recognized and buried at ANC. Indeed, ANC was created and founded as a direct result of the Civil War in that it was – built on grounds previously owned by and resided upon by Mary Custis Lee, her husband General Robert E. Lee, and their family.

57.     Section 16 of ANC contains an area that has been specially set aside and

---

[8] *See* U.S. Dept. of the Interior, National Register of Historic Places (https://www.dhr.virginia.gov/wp-content/uploads/2019/01/000- 0042_ArlingtonNationalCemetery_2014_NRHP_nomination_FINAL_complete.pdf.)

[9] *See* National Park Service, Arlington National Cemetery, Arlington:

designated by Congress to reinter the remains of approximately 260 confederate soldiers who died in prisoner-of-war camps, in hospitals, and on battlefields near Arlington. After Section 16 was established, the Memorial was erected. Section 16 continued to be an active burial site for Southern veterans and their spouses into the 1960s. The Memorial itself is a gravemarker for the remains of six persons.

58.     Section 16 has its roots in the late 1890s after the Spanish-American War, and it originated through the efforts of by President William McKinley after his travels across the American South as part of his tour of the United States following the defeat of Spain. It was during this tour that he witnessed the deplorable state of Confederate graves across the region, and he committed himself, as well as the nation to do better. President McKinley himself was a veteran of the Civil War, having enlisted as a private and mustered out at the end of the War as a *brevet* Major in the Union Army.[10] That McKinley intended the Memorial to be a symbol of reconciliation between the North and South in the post-Spanish-American War era is made clear in a  speech he gave in Atlanta, Georgia in which he proclaimed that "in the spirit of fraternity we should share with you in the care of the graves of Confederate soldiers…. Sectional feeling no longer holds back the love we feel for each other. The old flag again waves over us in peace with new glories."[11]

59.     In 1900, Congress authorized the re-internment of all Confederate soldier remains at ANC and acted to reinter 262 Confederate soldiers.[12]

---

[10] *See* https://www.whitehouse.gov/about-the-white-house/presidents/william-mckinley/.

[11] *See* Arlington National Cemetery, Confederate Memorial, Section 16 at:
(https://www.arlingtoncemetery.mil/Explore/Monuments-and-Memorials/Confederate- Memorial).

[12] *Id.*

### B.    GRAVEMARKER FOR THOSE INTERRED AT THE MEMORIAL'S BASE

60.    Unveiled in 1914 and dedicated by President Woodrow Wilson, the Memorial designed by noted American sculptor Moses Jacob Ezekiel, a Confederate veteran and the first Jewish graduate of Virginia Military Institute, embodies the fulfillment of the commitment made earlier by President McKinley to reconcile the Nation, with support by an act of Congress in 1900.

61.    Moses Ezekiel originally named the Memorial the "New South Memorial," despite the artist's chosen name, it is commonly referred to as the Reconciliation Memorial. Notably, as previously discussed, Moses Ezekiel desired to be interred at the base of his sculpture, which occurred in 1921 four years after his death in 1917.[13] Because of the First World War, his interment was delayed. However, when the artist was finally laid to rest, it was within a couple of feet from the Memorial's base without the placement of the traditional white marble headstone which is authorized for use in ANC. Instead, a footstone denotes his grave. Placement at the base of the Memorial was also afforded to three Confederate officers, who also lay mere feet from the base of the Memorial.

62.    The graves of the approximately 487 Southern service personnel and their spouses are arranged in concentric circles around the Memorial and the six graves that it marks.

### C.    THE MEMORIAL'S HISTORICAL SIGNIFICANCE

63.    As the ANC website states, "The history of the Confederate Memorial embodies the complex and contested legacy of the Civil War at Arlington National Cemetery, and in American culture generally."

64.    As the ANC site further explained:

---

[13] See https://abcnews.go.com/Politics/story?id=7657749&page=1.

The Confederate Memorial offers an opportunity for visitors to reflect on the history and meanings of the Civil War, slavery, and the relationship between military service, citizenship and race in America. This memorial, along with the segregated United States Colored Troops graves in Section 27, invites us to understand how politics and culture have historically shaped how Americans have buried and commemorated the dead. Memorialization at a national cemetery became an important marker of citizenship — which, in the post-Reconstruction era, was granted to white Civil War veterans, Confederate or Union, but not to African American soldiers who had served their country. In such ways, the history of Arlington National Cemetery allows us to better understand the complex history of the United States. became an important marker of citizenship — which, in the post-Reconstruction era, was granted to white Civil War veterans, Confederate or Union, but not to African American soldiers who had served their country. In such ways, the history of Arlington National Cemetery allows us to better understand the complex history of the United States.[14]

65.     Traditionally, most Presidents from Wilson onwards have laid a wreath of flowers at the Memorial on Veterans' Day, carrying forward the tradition of reconciliation represented by Section 16 and the Memorial. Even President Obama continued the tradition and expanded the same by sending a wreath to the national monument dedicated to the African American soldiers and sailors who fought in the American Civil War. That memorial in particular honors the members of the USCT, or in the parlance of the time used by the United States Army, United States Colored Troops.[15]

66.     As outlined further below, there is strident civic opposition, among Americans of varying backgrounds, racial identities, and social and political affiliations, for the removal or destruction of the Memorial based on these and other historical justifications.

### D.     REQUIRED PUBLIC INPUT WAS DENIED

67.     Members of the public were prepared to present oral comments to the Defendant's

---

[14] *See* https://www.arlingtoncemetery.mil/Explore/Monuments-and-Memorials/Confederate-Memorial

[15] *See* https://abcnews.go.com/Politics/story?id=7657749&page=1;

Advisory Committee on Arlington chartered under the FACA,[16] at the November 7-6, 2022, Zoom Meeting, but they were denied the opportunity to do so.

68.     More than 320 written comments opposing removal were submitted. However, the records is clear that a number of interested parties provided input in relation to the planned removal and destruction of the Memorial. Additionally, the Plaintiff SCV understands that individuals registered to provide verbal comment at the November 7-8, 2021 Advisory Committee meeting, but were denied this opportunity in violation of DOD's regulations under 41 C.F.R. 102-3.140(d) which provide "any member of the public may speak, if an agency's guidelines so permit." As a result, Defendants foreclosed such opportunities by refusing to allow members of the public to address the ANCFAC in violation of Defendants' regulations implementing the FACA.[17]

69.     Shockingly, the Defendants also opted not to hear from its own advisory committee, responding to Advisory Committee member Lt. Col. Gerald Torrance (U.S. Army, Ret.) a designated five times military historian, who spoke up during the November 8, 2022, session to state that the proposed removal of the Memorial was insidious, he was quickly informed by Maj. Gen. Elizabeth A. Harrell (U.S. Air Force, Ret.) that it was not a matter of "if" the Memorial was going to be moved, it was a matter of "when." Such comments underscore the implicit bias displayed by some members of the Advisory Committee on Arlington before the public.

70.     Defendants further prohibited public comments by violating Congressional mandates to seek local sensitivities with regard to renaming or removal under the NDAA and

---

[16] The Advisory Committee on Arlington was established pursuant to 10 U.S.C. § 4723, in accordance with the Federal Advisory Committee Act of 1972 (5 U.S.C., Appendix, as amended) and 41 C.F.R. Section 102-3.50(a).

[17] See Charter, Advisory Committee on Arlington National Cemetery, at 6 (https://www.arlingtoncemetery.mil/Portals/0/Docs/ACANC/2022-2024-ACANC-Charter-Renewal-Final.pdf) (last visited March 6, 2023) (The Department of Defense (DoD), through the Department of the Army "ensures compliance with the requirements of the FACA, the Government in the Sunshine Act of 1976 (5 U.S.C. § 552b) governing Federal statutes and regulations, and DoD policies and procedures.")

failing to comply with public comment requirements under the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA").

## E.      DEFENDANTS EXCEEDED THEIR AUTHORITY UNDER THE NDAA

71.      NDAA § 370 authorized the Department of Defense ("DOD") to establish a Commission on the Naming of Items of the Department of Defense for the purpose of removing and renaming DOD assets that commemorated the Confederate States of America or any person who voluntarily served with the Confederacy. § 370(b).

72.      NDAA § 370(g)(4) requires the Naming Commission to include its methods of collecting and incorporating local sensitivities associated with the removal or renaming of DOD assets in its briefing and written report to the Committees on Armed Services.

73.      NDAA § 370(j) explicitly exempts grave markers from the Naming Commission's consideration with regard to renaming or removal action, and also requires the Naming Commission to define what constitutes a gravemarker.

74.      On August 8, 2022, the Naming Commission submitted its Final Report to Congress, Part I, which detailed its efforts to collect and incorporate local sensitivities regarding only the *renaming* of DOD assets.[18]

75.      The Naming Commission's efforts did not include collecting or incorporating local sensitivities regarding the *removal* of DOD assets.

76.      On September 19, 2022, the Naming Commission submitted its Final Report to Congress, Part III, containing further recommendations which included the recommendation to remove the Memorial.

77.      The Naming Commission's Final Report to Congress, Part III, did not include any evidence that the Commission made any effort to collect and incorporate local sensitivities

---

[18] *See* The Naming Commission, *Final Report to Congress Part I: United States Army Bases*, p. 9-10 (2022).

regarding its recommendation to remove the Memorial in Section 16 of ANC.

78.     38 U.S.C. § 2306 defines "grave markers" as being "headstones, markers, and burial receptacles."

79.     In the Naming Commission's Final Report to Congress, it defined 'grave markers' as "[m]arkers located at the remains of the fallen. A marker, headstone, foot stone, niche cover, or flat marker containing inscriptions commemorating one or more decedents interred at that location." Such a definition is inconsistent with the provisions of 38 U.S.C. § 2306, and such definition is inconsistent with the scope and intention of Chapter 23 of Title 38 0f the United States Code which pertains to burial benefits and rights of veterans.

80.     The Final Report recognized that "Confederate-named grave markers located on any Department of Defense installation are not in the Naming Commission's remit and are exempt."

81.     On October 6, 2022, Defendant Austin approved the Naming Commission's recommendations directing the use of existing resources to implement them.

82.     On January 5, 2023, Defendant LaPlante directed the DOD organizations to begin full implementation, using existing resources, of the Naming Commission's recommendations.

83.     In a February 9, 2023 email, a representative of the Defendants confirmed that the January 5, 2023 directive is a final agency action. There is no further opportunity for public debate or comment on this issue, and the Army is preparing to tear down and remove the Memorial forthwith:  "[The Secretary of Defense] has accepted the findings of the Commission and as such directed the Army to remove the monument so all public comment being solicited by the Army will be focused on disposition the monument after removal."

84.     The Department of the Army has jurisdiction over the ANC and is responsible for

implementing the Naming Commission's recommendations. Defendants have no authority to order the removal of the Memorial without first seeking local sensitivities, and even then, the Memorial is a grave marker, and Congress provided no authority to the Naming Commission or to any of the Defendants to remove it.

85.     Defendants acted arbitrarily and capriciously when failing to consider the environmental impacts, impacts on historic and cultural resources, and foreclosing public comment prior to ordering the removal of the Memorial.

**F.     DEFENDANTS VIOLATED FEDERAL ADVISORY COMMITTEE ACT (FACA)**

86.     The Secretary of Defense, pursuant to 10 U.S.C. § 7723 and in accordance with FACA, established the Advisory Committee on Arlington to provide independent advice and recommendations on matters relating to ANC, including the erection of memorials in ANC.

87.     The Department of Defense, through the Department of the Army, is responsible for ensuring compliance with the requirements of the FACA and regulations implementing its requirements. Defendants acted arbitrarily and capriciously when, on November 8, 2022, after Advisory Committee on Arlington members raised concerns with the decision to remove the Memorial, the Department of the Army responded that the decision to remove the Memorial had already been made and that there was no opportunity for  any input on the part of  Advisory Committee on Arlington to the Secretary of the Department of Defense.

88.     Defendants acted in violation of its FACA regulations when, on November 8, 2022, the  Department of the Army's legal counsel failed to ensure compliance with FACA when the Advisory Committee on Arlington denied members of the public an opportunity to address the Advisory Committee on Arlington for the purpose of stating to removal of the Memorial.

## G.  DEFENDANTS VIOLATED THE REQUIREMENTS OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA)

89.     NEPA § 102(2) requires Federal agencies to evaluate the environmental consequences of their actions and consider and alternatives to proposals for all major Federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332 (2)(C).

90.     NEPA § 101(b)(4) states that the Federal Government must use all practicable means to "preserve important historic, cultural, and natural aspects of our national heritage." 42 U.S.C. § 4331(b)(4).

91.     Defendants' actions constitute a major Federal action because their adoption of the Naming Committee's plan is entirely financed, conducted, regulated, and approved by Federal agencies. 40 C.F.R. § 1508.1(q)(2).

92.     Defendants' actions will significantly affect Section 16 and ANC, a historic district which is listed on the National Register of Historic Places.

93.     Defendants have neither evaluated the environmental consequences of implementation of the Commission's recommendation to remove the Memorial from ANC, nor have they considered any alternatives to the proposed action as required by NEPA.

94.     Defendants have violated NEPA §102 by failing to consider environmental impacts of the removal recommendation prior to Final Agency Action.

95.     By failing to consider alternatives to the recommendation to remove, Defendants have not used all practicable means to preserve important historic, cultural, and natural aspects of our national heritage as required by 42 U.S.C. § 4331(b)(4) as the same apply to the Memorial.

## H.  DEFENDANTS VIOLATED THE REQUIREMENTS OF THE NATIONAL HISTORIC PRESERVATION ACT (NHPA)

96.     NHPA  §  106  requires  Federal  agencies  with  jurisdiction  over  Federal

undertakings, prior to the approval of the expenditure of any Federal funds, to consider the effect of the undertaking on any historic property and to provide the Advisory Council on Historic Preservation an opportunity to comment. 54 U.S.C. § 306108.

97.     Defendants' decision and directive to implement the Commission's removal recommendation is a Federal undertaking. 36 CFR 800.16(y).

98.     Any site that is included in the National Register of Historic Places is considered historic property. 54 U.S.C. § 300308.

99.     The Arlington National Cemetery was listed on April 11, 2014, on the National Register of Historic Places, and the entirety of the cemetery is counted as one contributing site, and every resource and constituent part of the cemetery contributes significantly to the ANC Historic District. Moreover, the Memorial is listed as a contributing resource to the historic significance of ANC.

100.    Because of the foregoing, the Defendants failed to comply with NHPA § 106 because they have failed to consider the adverse effects that removal of the Memorial will have on the integrity and significance of the Arlington National Cemetery as our nation's most prominent military cemetery.

## VI.    CLAIMS

## COUNT I

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
## 5 U.S.C. § 706(2)(A)

101.    The Plaintiffs hereby incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein. The Plaintiffs further state and allege that they will be aggrieved by Defendants' action and, as such, are entitled to judicial review. 5 U.S.C. § 702.

102.    The Defendants' actions are subject to judicial review as a final agency action for which there is no other adequate remedy. 5 U.S.C. § 704. Moreover, the Defendants' approval and directive to implement the Commission's recommendations is a final agency action because it terminates the DOD's decision-making process with regard to the renaming and removal of DOD assets, and it imposes an obligation upon DOD organizations to use existing funds to implement the Commission's recommendations.

103.    Defendants' actions are not subject to further agency review of any kind or for any reason, making it a final agency action. As a result, under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and set aside a final agency action that is arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.

104.    The Defendants' approval and directive to implement the Commission's recommendations was arbitrary, capricious, and not in accordance with law. Specifically, the Defendants' actions are arbitrary and capricious as they are not in accordance with NDAA §§ 370(g) and (j) because they (i) failed to incorporate local sensitivities; (ii) and approved the removal of a grave marker which is explicitly excluded from consideration for removal.

105.    Defendants' actions are arbitrary and capricious because they have entirely failed to consider (1) the environmental impacts and alternative actions, including taking no action, as required by NEPA § 102; and (2) the impact that removal will have on historic and cultural resources as required by NHPA § 106.

106.    Defendant's actions are arbitrary and capricious because they denied the opportunity to receive independent advice and recommendations from the Advisory Committee on Arlington and denied interested parties an opportunity to address the Advisory Committee on Arlington in violation of FACA regulations.

107.    This Court must set aside Defendants' actions under APA, 5 U.S.C. § 706(2)(A).

## COUNT II

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. § 706(2)(C)**

108.    Plaintiffs hereby incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

109.    Under the APA, 5 U.S.C. § 706(2)(C), this Court is required to hold unlawful and set aside a final agency action found to be in excess of statutory jurisdiction authority, or limitations, or short of statutory right.

110.    The Defendants' exceeded their authority under NDAA § 370 when they approved and directed implementation of the Commission's legally flawed recommendations as the authority granted to Defendants by NDAA § 370 expressly required the consideration of local sensitivities when recommending removal of DOD assets, § 370(g).

111.    The Commission did not consider local sensitivities associated with its recommendation to remove the Memorial. This is further compounded by the fact that the authority granted to Defendants by NDAA § 370 expressly exempted grave markers from the scope of those DOD assets, § 370(j).

112.    The Memorial marks the graves of Confederate soldiers interred in Section 16 of Arlington National Cemetery. The Memorial is also the grave marker and headstone for Moses Ezekiel, the Jewish Confederate soldier and artist, as well as three other Confederate officers and the wives of two of the officers.

113.    The Commission failed to comply with the express requirement of subsections (g) or (j) when making its recommendations. As a result, the Defendants' approval, and directive to implement these flawed recommendations exceeded its authority.

114.     Defendants exceeded the limitations imposed on Federal agencies by (1) NEPA § 102 which required them to evaluate the environmental consequences and alternatives to the removal of the Memorial; and (2) NHPA § 106 which required consideration of the impact that removal will have on historic and cultural resources. As a result, this Court must set aside Defendants' actions under APA, 5 U.S.C. § 706(2)(C).

## COUNT III

### VIOLATION OF THE NATIONAL ENVIRONMENTAL POLICY ACT
### 42 U.S.C. § 4321, ET SEQ.

115.     Plaintiffs hereby incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein. Defendants' actions constitute a major Federal action because their adoption of the Naming Committee's plan is entirely financed, conducted, regulated, and approved by federal agencies. 40 C.F.R. § 1508.1(q)(2).

116.     Defendants' actions will significantly affect Section 16 and ANC, a historic district listed on the National Register of Historic Places. This impact is due to the failure of the Defendants to evaluate the environmental consequences of the implementation of the Commission's recommendation to remove the Memorial from ANC, and their failure to consider any alternatives to the proposed action as required by NEPA.

117.     Defendants have violated NEPA § 102 by failing to consider the environmental impacts of the removal recommendation prior to Final Agency Action. Thus, by failing to consider alternatives to the recommendation to remove, Defendants have not used all practicable means to preserve important historic, cultural, and natural aspects of our national heritage as required by 42 U.S.C. § 4331(b)(4).

## COUNT IV

## VIOLATION OF THE NATIONAL HISTORIC PRESERVATION ACT
## 54 U.S.C. § 300101, ET SEQ.

118.   Plaintiff hereby incorporates by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

119.   The Defendants' decision and directive to implement the removal recommendation is a Federal undertaking. 36 CFR 800.16(y). Moreover, any site that is included in the National Register of Historic Places is considered a historic property. 54 U.S.C. § 300308.

120.   Specifically, Arlington National Cemetery is listed on the National Register of Historic Places as the Arlington National Cemetery Historic District ("ANCHD") as of April 11, 2014, and the entirety of the cemetery is counted as one contributing site, and every resource and constituent part of the cemetery contributes significantly to the ANC Historic District, and the Memorial is listed as a contributing resource of the historic nature of the ANC Historic District.

121.   Defendants failed to comply with NHPA § 106 because they have failed to consider the adverse effects that removal of the Memorial will have on the integrity and significance of the Arlington National Cemetery as our nation's military cemetery prior to Final Agency Action. Additionally, the Defendants failed to comply with NHPA § 106 because they failed to consult with the Advisory Council on Historic Preservation in violation of the NHPA prior to Final Administrative Action. 54 U.S.C. § 306108.

## BASIS FOR RELIEF

## DEFENDANTS' ACTIONS ARE ARBITRARY AND CAPRICIOUS, CONTRARY TO LAW AND/OR IN EXCESS OF STATUTORY JURISDICTION OR AUTHORITY

122.   Plaintiff incorporates by reference as if fully set forth here, each and every

allegation set forth in the above paragraphs, asserting that the Defendants acted contrary to law and exceeded their statutory jurisdiction in ordering the removal of the Confederate Memorial, by:

a.      unlawfully disregarding Congressional direction to seek local sensitivities;

b.      unlawfully directing removal of a gravemarker, which is an area where the Defendants are devoid of authority as the Defendants lack the requisite jurisdiction; and

c.      the Defendants acted in violation of NEPA, NHPA and FACA.

For these and other reasons, the Defendants actions are not in accordance with law or are in excess of the DOD's statutory jurisdiction or authority in violation of the APA § 706.

## WHEREFORE PLAINTIFFS PRAY THAT THEY BE GRANTED THE FOLLOWING RELIEF:

1.      That the Defendants be temporarily and permanently be enjoined from removing the Reconciliation Memorial (the Confederate Memorial) at Arlington National Cemetery, sculpted by artist and veteran Moses Jacob Ezekiel, as it serves as the gravemarker for six individuals including the artist himself.

2.      That the Court determine and declare that the Recommendations of the Naming Commission, and other actions taken by the Naming Commission, insofar as they affect removal of the Reconciliation Memorial (the Confederate Memorial) at Arlington National Cemetery, violate The Administrative Procedure Act, 5 U.S.C. § 706(2)(A), The Administrative Procedure Act 5 U.S.C. § 706(2)(C), The National Environmental Policy Act 42 U.S.C. § 4321, ET SEQ., and The National Historic Preservation Act 54 U.S.C. § 300101, ET SEQ., and therefore that they are void and of no effect.

3.      That the Court determine and declare that the Recommendations and other Naming Commission Acts to remove the Reconciliation Memorial (the Confederate Memorial) at Arlington National Cemetery, are unlawful.

4.      That Plaintiffs recover from all Defendants their litigation costs including but not limited to attorney's fees expended herein.

5.      That Plaintiffs have such other and further relief as the nature of their case may require.

_____
ROY P. HUDSON JR.,
DEREK J. UNDERWOOD,
STEVEN R. HEISHMAN,
BRITTON F. EARNEST SR.,
THE SONS OF CONFEDERATE
VETERANS, INC.

S. Braxton Puryear, Esquire
Attorney at Law
Post Office Box 291
Madison, Virginia  22727
VSB#30734
(540) 948-4444 Telephone
(540) 948-4451 Facsimile
sbpuryear@verizon.net
Counsel for Plaintiffs

H. Edward Phillips, Esquire
Attorney at Law
219 Third Avenue North
Franklin, Tennessee 37064
TNBPR No. 016850
(615) 599-1785, Ext. 229 Telephone
(615) 503-6940 Facsimile
edward@phillipslawpractice.com
Counsel for Plaintiffs, pro hoc vice